**UNEMPLOYED WORKERS ORGANIZING COMMITTEE et al., Plaintiffs,**

v.

**Richard A. BATTERTON et al., Defendants.**

**Civ. A. No. M–77–1166.**

United States District Court, D. Maryland.

Sept. 11, 1979.

C. Christopher Brown, Judith F. Fournelle, and Barbara B. Mello, Baltimore, Md., for plaintiffs.

Carolyn I. Polowy, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

This action is presently before the court on the plaintiffs' motion for award of attorneys' fees pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988. The plaintiffs seek an award of $15,625 as fees for the three attorneys serving as counsel on their behalf in this case.

### I

The plaintiffs initiated this action on July 20, 1977 under 42 U.S.C. § 1983 alleging that the defendant infringed upon their constitutional rights by denying them the right to "distribute noncommercial leaflets to, solicit petition signatures from, engage interested persons in conversation within the public access areas of Baltimore Employment Security Administration (ESA) office in a manner which does not interfere with the normal course of ESA business." On June 12, 1978 the parties filed a settlement agreement in this matter, thereby resolving all issues except for the plaintiffs' claim for attorneys fees. Under the terms of the settlement agreement the defendant agreed to allow UWOC members to enter the ESA building for the purposes of distribution of pamphlets, collection of petition signatures, and conversations with claimants or other members of the public, subject to reasonable limitations on the time, place, and manner of entrance. The plaintiffs presently seek an award of attorneys fees for the reasonable value of the time spent by plaintiffs' counsel in securing this settlement.

The Civil Rights Attorneys Fees Awards Act of 1976, Pub.L.No.94–559 (Oct. 19, 1976) was enacted by Congress in large part to bridge the gap created by the Supreme Court's decision in *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which limited cases in which a court could

award attorneys' fees to those in which (1) a party acted in bad faith, (2) counsel helped secure a fund for the common benefit of a class, or (3) a statute specifically provided for attorneys' fee awards. The Act specifically provides for attorneys' fees in Civil Rights cases as follows:

> In any action or proceeding to enforce a provision of . . . [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

The legislative history of the Act stresses the fact that civil rights laws depend heavily on private enforcement, thus making fee awards an important impetus to encourage private citizens to pursue appropriate relief under these laws. S.Rep.No.1011, 94th Cong. 2nd Sess. (1976). The standard under the Act is to be the same as that under the 1964 Civil Rights Act. Accordingly, the party seeking relief provided by civil rights laws, if successful, should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Further, under this standard a plaintiff should not be deterred from filing an action by requiring payment of fees to the defendant when unsuccessful, absent a showing that the litigation was frivolous, vexatious or for purposes of harassment. *Pao v. Board of Trustees of Prince Georges Community College*, Civ. No. M–76–574 (D.Md.1977); *Lee v. Chesapeake & Ohio Railway Co.*, 389 F.Supp. 84 (D.Md.1975); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34 (2nd Cir. 1978). The focus is on the provocative role of the plaintiff's suit, not the motivation of the defendant. Thus the defendant's good faith is not controlling. The basic rationale behind the Act, as recently stated by the Fourth Circuit, is that:

> "enforcement of civil rights legislation can best be achieved by encouraging the public to act as private attorneys general." *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979).

The issue presently before the court is whether the plaintiffs are entitled to an award of attorneys' fees under this standard. Initially it must be shown that the plaintiffs are a "prevailing party" in this action. The word "prevailing" has been liberally construed by the courts. It is not necessary that the plaintiffs achieve all their objectives, or that the matter go to a full trial on the merits; rather it is sufficient that the plaintiffs accomplished the major objectives of the litigation. As stated by the Fourth Circuit, "A plaintiff need not prevail on all issues if a significant one is resolved so as to achieve some of the benefit sought through litigation." *Bonnes v. Long, supra* at 1318 (citing *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978); *See also, McManama v. Lukhard*, 464 F.Supp. 38 (W.D.Va.1978); *NAACP v. Bell*, 448 F.Supp. 1164 (D.D.C., 1978). A party may "prevail" at any of the various stages of the litigation before final judgment. *Bonnes v. Long, supra* at 1318. The plaintiff may also prevail through a consent judgment or without obtaining formal relief. *Bonnes v. Long, Id.*

In the present case, the plaintiffs sought declaratory and injunctive relief to allow them to distribute leaflets, solicit petition signatures, and engage in conversation with persons in public access areas of the ESA offices. The consent decree filed by the parties in this action grants the plaintiffs access to ESA public areas for the purposes of these functions, subject to limitations on the time and manner of entrance to the facilities. Given this result, the plaintiffs have clearly "prevailed", as required by the Act, as they have essentially achieved the objectives set out in the prayer for relief in the complaint.

The defendants, however, contend that the unsettled state of the law in the area of First Amendment rights concerned in this case make it uncertain that the plaintiffs would have prevailed on the merits and thus an award of attorneys fees is unwarranted. This argument must fail, as the test is not whether the plaintiffs would have prevailed had the case gone to trial,

but rather whether the plaintiffs did in fact prevail in whatever outcome resulted. In this instance the plaintiffs clearly prevailed under the terms of the consent decree. The defendants, after agreeing to a settlement substantially granting plaintiffs' demands, cannot now assert that the defendants would have prevailed in a hearing on the merits.

█ Given that the plaintiffs have "prevailed" in this action, it is within the scope of the court's discretion to grant attorneys' fees under the Act. *Newman v. Piggie Park Enterprises, supra; Bonnes v. Long, supra; Burt v. Abel*, 585 F.2d 613 (4th Cir. 1978). Fees should generally be awarded, absent unusual circumstances, and it is an abuse of discretion to deny fees to a successful civil rights plaintiff, without specifically stated grounds for denial. *Northcross v. Memphis Board of Education*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973).

In the present case, defendants contend that "unusual circumstances" exist which should preclude the award of fees to the plaintiffs. This assertion is based on the contention that the plaintiffs' behavior prior to the litigation constitutes a basis upon which recovery should be denied. The defense brief cites numerous instances in which the conduct of plaintiffs was both unruly and hostile. The defense asserts that this history of behavior should bar the award of attorneys fees on a "clean hands" theory, and cites *Castleberry v. Langford*, 428 F.Supp. 676 (N.D.Tex.1977) and *Skehan v. Board of Trustees*, 436 F.Supp. 657 (M.D. Pa.1977) in support of this position. In response, the plaintiffs argue that this behavior, even if found to be improper, presents no basis for a denial of fees.

█ In analyzing this issue, it should first be noted that the Act does not approve an equitable theory for awarding attorneys fees; rather it provides a statutory basis for their award, largely as an incentive to plaintiff litigation under the civil rights laws.

The *Castleberry* case cited by the defendants, although decided after the enactment of the Act, bases its denial of attorneys fees on equitable doctrine without even citing the applicable statute. Thus this case provides no insight on the present issue.

█ The *Skehan*, case, which defendants also rely heavily upon, does purport to deny an award of fees to a prevailing party under the Act based on equitable principles. The reasoning of this case has not only been questioned in later decisions (see, e. g. *Lund v. Affleck*, 442 F.Supp. 1109 (D.R.I.1977)), but on appeal the Third Circuit specifically held that an award of attorneys fees in that case may be proper, and the issue has been remanded to the district court. In remanding, the court of appeals specifically referred to the legislative history of the Awards Act which states that a party, if successful, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. *Skehan v. Board of Trustees*, 590 F.2d 470, 496 (3rd Cir., 1978). Thus, the legislative history and the weight of case law support a liberal construction of the Awards Act to grant attorneys fees, unless unusual circumstances would render such an award unjust. S.Rep.No.1011, 94th Cong., 2nd Sess. (1976); *Bonnes v. Long, supra; McManama v. Lukhard, supra; Mid-Hudson Legal Services, Inc. v. G & U, Inc., supra; Morrow v. Dillard*, 580 F.2d 1284 (5th Cir. 1978). The disruption alleged by the defendants in this action falls short of the special circumstances contemplated by this standard, and thus fails to provide an adequate basis for denying attorneys fees properly sought under the Act. Therefore, the plaintiffs will be allowed to recover attorneys fees in this action.

II

The second issue which presents itself to the court is the determination of the amount which should properly be awarded. The plaintiffs in this action were represented by three separate attorneys: C. Christopher Brown as lead counsel, along with Judith F. Fournelle, and Barbara Mello as co-counsel. Mr. Brown is presently an associate professor of law who also carries on a

small, private practice. Ms. Fournelle is an attorney with Legal Aid Bureau, Inc. in Baltimore, Maryland. Ms. Mello is an attorney with the ACLU in Baltimore, Maryland. Each of plaintiffs' counsel submitted separate affidavits and time sheets accompanying the plaintiffs' Motion for Award of Attorneys' Fees setting forth their estimate of the value of their individual services on this case.

The defendants have raised three main objections to the amount of the award sought by the plaintiffs. First, the defendants contend that attorneys fees should only be awarded to private counsel. Second, the defendants assert that the efforts of plaintiffs' counsel were unnecessarily duplicative, and therefore the award should be reduced in an appropriate amount. Third, the defendants claim that the value of the time expended by counsel in litigating the issue of fees is not properly compensible in a fee award.

■ Regarding the limitation of fee awards to private counsel, the defendants assert that private counsel, Mr. Brown, was willing to represent the plaintiffs in this action, thereby supplying the counsel the Act seeks to provide. Although an award of attorneys fees to Mr. Brown might be appropriate, the defendants claim that awards to the public funded counsel are inappropriate as the incentive function of the Act had already been served by the acquisition of private counsel by plaintiffs. The defense further contends that the Legal Services Corp. Act acts as a bar to a claim for attorneys fees on the part of Ms. Fournelle.

In general, case law supports the recovery of attorneys fees, when appropriate under the Act, by Legal Aid and other publicly funded legal service organizations. *Bonnes v. Long, supra; Schmidt v. Schubert*, 433 F.Supp. 1115 (E.D.Wis.1977); *Mid-Hudson Legal Services, Inc. v. G & U, Inc., supra.* The rationale behind these holdings is that, although the litigant pays no direct fee for representation, the legal service office incurs costs both in expenditures of money and personal services. These ex-penditures channel resources away from other endeavors. The District Court of Rhode Island addressed this issue, finding that: "Priorities must be established that may mandate the loss of services in certain areas when complex, time consuming civil rights litigation is undertaken. The award of attorneys' fees can avoid such loss and thus stimulate continued representation of litigants in civil rights actions." *Lund v. Affleck*, 442 F.Supp. 1109 at 1112 (D.R.I. 1977), aff'd 587 F.2d 75 (1st Cir. 1978).

The issue of the combination of private and non-private attorneys was discussed by the First Circuit in *Reynolds v. Coomey*, 567 F.2d 1166 (1st Cir. 1978), as cited by the plaintiffs. In *Reynolds* the court held that the contribution of all attorneys must be taken into consideration in determining the fee, including those attorneys employed by public interest firms or organizations.

Thus in the present case, Ms. Fournelle and Ms. Mello are entitled, along with Mr. Brown, to be compensated for the work they performed.

Defendants also contend that Attorney Fournelle is not entitled to a fee award in that this case was taken by Legal Services in violation of the standards set out in the Legal Services Corp. Regs., 45 C.F.R. § 1609. Given the Civil Rights Attorneys Fees Awards Act, litigation of the type presented in this case may generally be considered "fee generating" under 45 C.F.R. § 1609.2, and thus not usually eligible for assistance from legal service corporation attorneys.

Exceptions to this policy do exist, however. Specifically the Corporation may provide legal representation in a case which is technically deemed to be fee generating, but in which "recovery of damages is not the principal object of the case and a request for damages is merely ancillary to an action for equitable or other non-pecuniary relief . . ." 45 C.F.R. § 1609.4(b).

■ The present case chiefly sought an award of injunctive and declaratory relief, and thus is removed from the "fee generating" barrier to legal service representation

under the applicable regulations. The plaintiffs are therefore entitled to attorneys' fees for the value of Ms. Fournelle's services on their behalf.

The second major contention by the defendants is that the efforts of plaintiffs' counsel were unnecessarily duplicative, and that their award should be reduced accordingly. Specifically the defendants assert that more than one attorney attended scheduled conferences, thus unnecessarily duplicating effort; and that the attorneys' time sheets fail to distinguish between legal and non-legal tasks.

 Concommitant with the court's discretion in awarding attorneys fees is the responsibility of examining the fee requests and determining a fair amount to be awarded, based on all the circumstances. Thus the court may look to such matters as the rate charged, duplicated effort involved, and similar factors in determining the reasonableness of the fee. *Clanton v. Allied Chemical Corp.*, 416 F.Supp. 39 (E.D.Va. 1976). Courts generally look to twelve factors in evaluating fee awards, those being:

1. Time and labor required;
2. Novelty and difficulty of question to be presented;
3. Skill required to perform legal services;
4. Preclusion of other employment by attorney;
5. Customary fee in community;
6. Whether fixed or contingent fee;
7. Time limitations by client or circumstances;
8. Amount involved and result obtained;
9. Experience, reputation, ability of attorney;
10. Undesirability of case;
11. Nature and length of professional relationship with client;
12. Awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330.

 In the present case, attendance at conferences by two or even all three of plaintiffs' counsel is not necessarily unreasonable, in light of the manner in which they would appear to have divided the research and work on the plaintiff's case. When multiple counsel work on a case, if research and drafting work is properly divided certain members of counsel necessarily become more familiar with discrete aspects of the case. Thus conferences may well necessitate attendance by more than one co-counsel. Consequently the plaintiffs' attorneys efforts do not appear unnecessarily duplicative in this respect. Further, the defendants' contention that Mr. Brown's time sheet reflects billings for non-legal effort appears trivial. Although the detail of Mr. Brown's time log does reveal some non-legal functions within his total billing, the overall presentation appears to be both fair and reasonable, given the nature and extent of his involvement in this case. It is not the function of the courts, in reviewing fees, to second guess every minute detail of time spent by an attorney in working on a case.

 Finally, the defendants contend that plaintiffs' counsel should not receive fee awards based on time involved securing attorneys fees. Although early cases disallowed fee awards based on this activity (*Clanton v. Allied Chem. Corp.*, 416 F.Supp. 39, 43 (E.D.Va.1976)), the later trend in cases has been to allow these fees as "bear[ing] a substantial relationship to advancement of the plaintiff's interests and therefore are compensable." *Donaldson v. O'Connor*, 454 F.Supp. 311, 317 (N.D.Fla. 1978). These latter cases generally allow the award, although they fail to lay down a general rule. The First Circuit, in *Souza v. Southworth*, 564 F.2d 609 (1st Cir. 1977) cites the *Clanton* case denying this portion of the fee award, yet allows fees in the case before the court, refusing to follow the sweeping denial of the *Clanton* court. Thus the general trend is to allow an award of fees based in part on attorney time spent to recover fees, and such should be the treatment in the present case.

In conclusion the court finds that plaintiffs are entitled to an award of attorneys'

fees under 42 U.S.C. § 1988 for the reasonable value of the time expended by plaintiffs' counsel on their behalf. The charges set out in the affidavits and exhibits accompanying plaintiffs' Motion for Award of Attorneys Fees appear fair and reasonable under the circumstances.

It is ordered this 11th day of September, 1979, by the United States District Court for the District of Maryland that the plaintiffs' motion for an award of $15,625.00 in attorneys fees is GRANTED.